**UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

KIMBERLY SMITH-JOHNSON,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

CASE NO. 11-14765

HON. MARIANNE O. BATTANI

**OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS, ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DENYING <u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

This matter is before the Court on Plaintiff Kimberly Smith-Johnson's Objections to the Magistrate Judge's Report and Recommendation ("R&R") upholding the denial of her petition for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. (Doc. 25). The R&R, issued by Magistrate Judge Steven Whalen, recommended that Defendant's Motion for Summary Judgment be granted because the decision of the Administrative Law Judge ("ALJ") was supported by substantial evidence. (Doc. 22). Plaintiff objected, citing the ALJ's failure to evaluate expert testimony that she suffered from mental retardation under Social Security Listing Level Impairment 12.05, and noting the ALJ's failure to account for moderate difficulties of concentration, persistence, or pace ("CPP") in the hypothetical question posed to the vocational expert ("VE"). For the reasons stated below, the Court **OVERRULES**

Plaintiff's objections, **ADOPTS** Magistrate Judge's R&R, **DENIES** Plaintiff's Motion for Summary Judgment, and **GRANTS** Defendant's Motion for Summary Judgment.

I.     **STATEMENT OF FACTS**

As the parties have not objected to the Magistrate Judge's recitation of the procedural history and administrative record, the Court adopts that portion of the R&R as if fully set forth herein.  See (Doc. 22 at 2-11).

II.    **STANDARD OF REVIEW**

   A.   **Objections to Magistrate Judge's Report and Recommendation**

A district court must conduct a de novo review of the parts of a magistrate judge's report and recommendation to which a party objects.  28 U.S.C. § 636(b)(1).  The district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate" judge.  Id.  The requirement of de novo review "is a statutory recognition that Article III of the United States Constitution mandates that the judicial power of the United States be vested in judges with life tenure."  United States v. Shami, 754 F.2d 670, 672 (6th Cir. 1985).  Accordingly, Congress enacted 28 U.S.C. § 636(b)(1) to "insure[ ] that the district judge would be the final arbiter" of a matter referred to a magistrate judge.  Flournoy v. Marshall, 842 F.2d 875, 878 (6th Cir. 1987).

   B.   **Commissioner's Disability Determination**

Judicial review of the Commissioner's disability decision is limited to determining whether the findings are supported by substantial evidence and whether the Commissioner employed proper legal standards in reaching his conclusion.  Brainard v. Sec'y of HHS, 889 F.2d 679, 681 (6th Cir. 1989).  "Substantial evidence exists when a

reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Casey v. Sec'y of HHS, 987 F.2d 1230, 1233 (6th Cir. 1993); Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 604 (6th Cir. 2009). Consequently, the standard of review is deferential and allows considerable latitude to administrative decisionmakers because it presupposes there is a "zone of choice" within which the decisionmakers can go either way, without interference by the courts. Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994); Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).

When determining whether substantial evidence supports the Commissioner's decision, the reviewing court must take into consideration the entire record, including "whatever in the record fairly detracts from its weight." Id. When the Appeals Council declines to review the Administrative Law Judge's ("ALJ") decision, the court's review is limited to the record and evidence before the ALJ. Cotton v. Sullivan, 2 F.3d 692, 696 (6th Cir. 1993). The court may look at any evidence in the administrative record, even if it has not been cited by the ALJ. Walker v. Sec'y of HHS, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that the reviewing court discuss every piece of evidence in the record. Kornecky v. Comm'r of Soc. Sec., 167 F.App'x. 496, 508 (6th Cir. 2006). Moreover, the court may not conduct a de novo review of the evidence, determine credibility, or weigh the evidence. Brainard, 889 F.2d at 681. The court's role is limited to a search for substantial evidence, that which is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007).

3

## III.  ANALYSIS

### A.  Framework for Disability Determination

In order to qualify as "disabled" under the Social Security Act, a claimant must be "[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In a step-by-step sequential process, the Commissioner considers whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether she can perform other work in the national economy.  20 C.F.R. § 416.920(a).  Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five.  Richardson v. Sec. of HHS, 735 F.2d 962, 964 (6th Cir. 1984).

### B.  Plaintiff's Objections

#### 1.  Step Three Objections

Smith-Johnson sets forth five objections the Magistrate Judge's finding regarding the ALJ's analysis at Step Three: whether the claimant has an impairment that meets or equals the requirements of an impairment listed in the regulations.  First, she argues the Magistrate Judge erred in concluding that although Dr. Kriauciunas' indicated the presence of mental retardation, he found Smith-Johnson was not disabled by the condition.  (A.R. 272).  She further asserts had the ALJ properly weighed the evidence,

4

he would have found Plaintiff disabled under Listing 12.05. The Court finds no error in the Magistrate Judge's contention.

Dr. Kriauciunas based his determination on Listings 12.04: Affective Disorders and 12.05: Mental Retardation. (A.R. 268). Regarding Listing 12.05, he found "[s]ignificantly subaverage general intellectual functioning with deficits in adaptive functioning manifested during the developmental period" supported by "[a] valid verbal, performance, or full scale IQ of 60 through 70." (A.R. 272). In reference to Listings 12.04 and 12.05, Dr. Kriauciunas then "indicate[d] to what degree the following functional limitations exist as a result of the individual's mental disorder(s)." (A.R. 278). He noted that none of the functional limitations exceeded the "moderate" level, indicating an insufficient level of severity to satisfy the functional criterion. (Id.) Contrary to Smith-Johnson's assertion that "an expert consulting Doctor believed that the Claimant met the criteria for Listing 12.05: Mental Retardation," Dr. Kriauciunas merely found some documentation of factors that evidenced the disorder. (A.R. 269). He never concluded Smith-Johnson met Listing 12.05. See Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001) ("[A] claimant will meet the listing for mental retardation only if the claimant's impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria.") (emphasis in original). Rather, Dr. Kriauciunas found Smith-Johnson met the introductory diagnostic description, but not any of the four criteria required to satisfy Listing 12.05. See (A.R. 278). Thus, there was no evidence to suggest Smith-Johnson met Listing 12.05, and the Magistrate Judge did not err in his conclusion.

5

Second, Smith-Johnson objects to the Magistrate Judge's conclusion that Dr. Koopman's evaluation did not state that Smith-Johnson was mentally retarded. (Doc. 25 at 3). She argues this is a misrepresentation because the diagnosis was merely "deferred." Contrary to the Magistrate Judge's finding, she asserts Dr. Koopman made no such finding that "reading difficulties, rather than borderline intelligence, explained the discrepancy between the low verbal IQ and higher scores on other testing." (Id.)

Dr. Koopman's report contains no finding of mental retardation. (A.R. 188-96). Indeed, the report states:

> Reading Comprehension is a specific area of difficulty for her *relative to her overall ability*. There is a noteworthy difference (13 points) between Kimberly's Reading Comprehension subtest score (76) *and her general cognitive ability*, indicating a particular weakness on tasks requiring her to read sentences and paragraphs and answer questions about what was read.

(A.R. 192) (emphasis added). Apparently Dr. Koopman noticed the discrepancy between Smith-Johnson's verbal and performance IQ scores, suggesting reading difficulties played a role. Whether the tests are separate indicators is of no import. Certainly, it is reasonable to conclude that reading difficulties evidenced by the WIAT-II may lead to poor performance on the WAIS verbal subtests. Thus, Smith-Johnson's assertion that "Plaintiff's verbal IQ score of 69 has nothing to do with the Plaintiff's reading difficulties" is not well taken.

Third, Smith-Johnson objects to the Magistrate Judge's contention that Dr. Koopman's "interpretation of the test results cannot be reasonably interpreted to conclude that Plaintiff was mentally retarded, much less that the condition was disabling." (Doc. 25 at 4). Essentially, she argues that because Dr. Koopman found a verbal IQ of 69, this requires at least an inquiry into whether Smith-Johnson is disabled

6

under Listing 12.05, wherein Dr. Kriauciunas may have yielded such a finding. However, as stated above, Dr. Kriaucinuas did conduct an inquiry into the possibility that Smith-Johnson met Listing 12.05. Although she demonstrated signs of such, there was no evidence that the degree of limitation rose to the sufficient level of severity to "impos[e] an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(C). In addition, Koopman suggested an explanation for the low verbal IQ: Plaintiff's difficulty with reading comprehension. Thus, the Magistrate Judge's conclusion is reasonable based on the evidence in the record, and Smith-Johnson's objection is meritless.

Fourth, Smith-Johnson objects to the Magistrate Judge's conclusion that Dr. Koopman determined her "intellectual limitations did not prevent her from working as a receptionist, secretary, legal assistant, or medical biller." (A.R. 195). As part of the evaluation of Smith-Johnson, Dr. Koopman conducted a Career Assessment Inventory to identify her interests and determine which jobs are suitable for her to perform. Smith-Johnson asserts Dr. Koopman merely suggested the fields she was interested in, not jobs that she could actually perform with her limitations. Although she is correct that Dr. Koopman identified jobs she was interested in, Dr. Koopman also stated, "[Smith-Johnson] could work doing clerical jobs as a receptionist, secretary, legal assistant, medical billing and similar secretarial/clerical jobs though will find the training of legal assistant somewhat challenging given her weak reading and math abilities." (A.R. 195). Thus, it is clear Dr. Koopman weighed Plaintiff's interest against her abilities to determine which for which occupations she was best suited. Although Smith-Johnson showed interest as a nurse aide or teacher aide, Dr. Koopman noted that "working with

any vulnerable population such as children, elderly or the ill is not advised." (Id.) Contrary to Plaintiff's argument, Dr. Koopman made a finding that Smith-Johnson could perform certain jobs in the event she received the necessary training.

Last, Smith-Johnson objects to the Magistrate Judge's conclusion that the ALJ need not perform a Step Three analysis for every finding in the transcript. (Doc. 25 at 5). She asserts that Dr. Kriauciunas' found her limitations met Listing 12.05; thus, the ALJ was required to provide reasoning for rejecting the finding. However, as the Magistrate Judge correctly noted, such is not required by Social Security Regulations or relevant case law. (Doc. 22 at 14). Moreover, the Court already found no evidence that Dr. Kriauciunas determined that Smith-Johnson met Listing 12.05. Dr. Kriauciunas merely found evidence of the presence of mental retardation, but further concluded it was not sufficiently severe in degree to warrant further inquiry. (A.R. 278). As there was no basis for the ALJ to conclude Smith-Johnson had a severe limitation of mental retardation, this obviated the need to perform analysis at Step Three in order to determine whether the condition met Listing 12.05. Therefore, Plaintiff's objection is without merit.

2.      Hypothetical Question Objection

Smith-Johnson also objected to the hypothetical question the ALJ posed to the VE regarding residual functional capacity ("RFC"). Specifically, she asserts the ALJ failed to account for her moderate difficulties in concentration, persistence, or pace ("CPP"); and thus, the decision is not supported by substantial evidence.

Moderate difficulties relating to CPP are evidence of substantial limitations and must be accounted for in the hypothetical question when determining Residual

Functional Capacity ("RFC"). See Edwards v. Barnhart, 383 F. Supp. 2d 920, 931 (E.D. Mich. 2005). Failing to acknowledge such limitations in the hypothetical question is grounds for remand or reversal, as the VE's response may not then serve as substantial evidence. Id. Thus, the question must accurately portray the plaintiff's physical and mental impairments. See Varley v. Sec'y of HHS, 820 F.2d 277, 779 (6th Cir. 1987).

> The ALJ posed the following hypothetical question to the VE:
>
> She is limited to occasional foot control operation with her left lower extremity. She can only occasionally climb, crouch, kneel, or crawl. And can frequently balance or stoop. She is limited to occasional overhead reaching with her right upper extremity. She has non-exertional limitations in that she is limited to simple, routine, and repetitive tasks and must avoid contact with the general public. Could such a person perform any of the claimant's past work?

(A.R. 42). In response, the VE testified that although the person could not perform any of Smith-Johnson's past work, she could perform unskilled, exertionally light work of a general office clerk; machine operator; and inspector. (A.R. 43). Smith-Johnson argues that the phrase "limited to simple, routine, and repetitive tasks" fails to account for her moderate limitations in CPP. The Court disagrees.

The court in Edwards found a similar hypothetical question failed to properly account for the claimant's moderate limitations in CPP. Edwards, 393 F. Supp. 2d at 931. However, Edwards does not stand for the proposition that such hypotheticals are *always* insufficient. Indeed, the court in Edwards noted that "[w]hile close," the question did not "fully convey" that particular claimant's limitations. Id. at 930. Here, although Dr. Kriauciunas found Smith-Johnson had moderate difficulties in CPP, he noted, "[c]laimant is able to do unskilled work. Is able to do *simple tasks on a sustained basis*. Claimant is moderately limited in ability to understand, remember, carry out *detailed*

9

*instructions*, to maintain attention and concentration for extended periods." (A.R. 280) (emphasis added). This conclusion clarifies Dr. Kriauciunas' opinion regarding moderate limitations in CPP and suggests Smith-Johnson's difficulty concentrating, persisting, or keeping pace limited her ability to perform detailed work, but not simple routine tasks. The ALJ properly accounted for this distinction in the hypothetical question by limiting Smith-Johnson only to simple, routine and repetitive tasks. In addition, numerous courts have found similar hypotheticals adequately account for moderate limitations in CPP. See Hess v. Comm'r of Soc. Sec., 2008 WL 2478325 at *7-8 (E.D. Mich. June 16, 2008) ("[s]imple routine tasks in a low stress environment" not incompatible with moderate limitations of CPP); Latare v. Comm'r of Soc. Sec., 2009 WL 1044836 at *3 (E.D. Mich. April 20, 2009) ("Unskilled work, by definition, is limited to understanding, remembering and carrying out only simple instructions and requiring little, if any, judgment.").

The Court also notes Smith-Johnson's claimed inability to get along with other people at work, which, if supported by concrete medical evidence, potentially narrows the list of jobs she could perform. Although the hypothetical excluded jobs that deal with the general public, certainly, every job requires some interaction with coworkers and supervisors. Throughout the evaluations and medical reports, Smith-Johnson stated she has a problem getting along with others. (A.R. 139). Bruce Daily, a vocational counselor, noted a recurring theme throughout her employment history: her attitudes and communication problems with other people. (A.R. 140). Her mental health report stated she "[d]oes not maintain satisfactory relationship[s] with co-workers, peers." (A.R. 186). Dr. Koopman acknowledged Smith-Johnson's depression, anxiety,

irritability and "self described anger and potential to act out physically." (A.R. 193, 195). In addition, Smith-Johnson told Dr. Kriauciunas that she had a hard time dealing with people, and that she deals with them in an "angry way instead of a nice way." (A.R. 280). However, there is a lack of concrete medical evidence to support Smith-Johnson's contention that she is simply unable to get along with others. Dr. Kriauciunas found Smith-Johnson moderately limited in ability to interact with the general public, noting he found her statements only partially credible. (A.R. 280) ("Although she says she avoids contact with others, she shops in stores."). This is consistent with Daily's observation the she performed well when training as a desk receptionist and that she was friendly and professional. (A.R. 141). Daily also noted she took feedback very well; and although she was shy at first, started to interact more with people. (Id.) Consequently, because the Court is limited in its determination to whether the decision of the Commissioner is supported by substantial evidence and may not make credibility determinations, the decision here must be upheld. Brainard, 889 F.2d at 681.

## IV.     CONCLUSION

In sum, the decision of the Commissioner to deny benefits is supported by substantial evidence. Accordingly, the Court **OVERRULES** Plaintiff's objections, **ADOPTS** Magistrate Judge's R&R, **DENIES** Plaintiff's Motion for Summary Judgment, and **GRANTS** Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

                                            s/Marianne O. Battani
                                            MARIANNE O. BATTANI
                                            UNITED STATES DISTRICT JUDGE

DATE: March 21, 2013

<u>CERTIFICATE OF SERVICE</u>

  I hereby certify that on the above date a copy of this Order was served upon all parties of record via the Court's ECF Filing System.

                  <u>s/Bernadette M. Thebolt</u>
                  Case Manager